UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHARLES C. WILLIAMS,
    *Plaintiff*,

v.

CITY OF HARTFORD *et al.*,
    *Defendants*.

No. 3:19-cv-00444 (JAM)

**ORDER DENYING MOTION FOR RECONSIDERATION**

    Plaintiff Charles C. Williams is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this lawsuit *pro se* and *in forma pauperis* against the City of Hartford and thirteen persons employed by either the City or the DOC. Although Williams was previously granted *in forma pauperis* status, I issued an order several days ago revoking that status pursuant to 28 U.S.C. § 1915(g). I concluded that Williams was not eligible to proceed *in forma pauperis* because he had accumulated three or more "strikes" by reason of his having previously filed actions or appeals that were dismissed because they were frivolous, malicious, or otherwise failed to state a claim. Doc. #14; *Williams v. City of Hartford*, 2020 WL 127705 (D. Conn. 2019) ("*Williams IV*").

    Williams has now moved for reconsideration. Docs. #15 and #16. Motions for reconsideration are governed by Local Rule of Civil Procedure 7(c), which provides that "such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c). This standard is strict: "A motion for reconsideration is justified only where the [movant] identifies an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ayazi v. United Fed'n of Teachers Local 2*, 487 Fed.

1

App'x. 680, 681 (2d Cir. 2012); *Barnett v. Connecticut Light & Power Co.*, 967 F. Supp. 2d 593, 596 (D. Conn. 2013).

In my prior ruling, I described how Williams had accumulated four strikes by reason of prior actions or appeals that were dismissed on grounds that they were frivolous, malicious, or otherwise failed to state a claim. Strike One occurred at the latest when Judge Thompson entered judgment on September 7, 2018, after having dismissed the *Williams I* action for what I explained were reasons of maliciousness. *See Williams IV,* 2020 WL 127705, at *2 & n. 2. Strike Two occurred on October 25, 2018, when Judge Dooley dismissed the *Williams III* action for failure to state a claim. *Id.* at 3. Strikes Three and Four occurred together on February 28, 2019, when the Second Circuit dismissed two of Williams' separate appeals from *Williams I* as frivolous. *Id.* at *2. Each of these strikes occurred prior to Williams' filing of his complaint in this action in March 2019.[1]

Williams argues that Judge Thompson's dismissal of the *Williams I* action should not count as a strike because one of his appeals from that judgment was still pending as of March 2019.[2] But, as I explained in my prior ruling, "[t]he pendency of this appeal does not foreclose my consideration whether Judge Thompson's dismissal of the action should count as a strike for purposes of section 1915(g)." *Id.* at 2 n. 3. In *Coleman v. Tollefson*, 135 S. Ct. 1759 (2015), the Supreme Court held that "[a] prior dismissal on a statutorily enumerated ground counts as a

---

[1] In my prior ruling, I stated that Williams filed this action on the date that it appears on the docket—March 26, 2019. Williams, however, argues that he is entitled to the benefit of the prison mailbox rule, *see Sides v. Paolano*, 782 F. App'x 49, 50 (2d Cir. 2019), such that he should be deemed to have filed this action as of March 8, 2019, when he claims that he handed his complaint to prison officials for filing. See also Doc. #1 at 68 (signature block of complaint bearing date March 8, 2019). This date discrepancy makes no difference to my ruling because all the strikes at issue occurred prior to March 8, 2019.

[2] Williams also argues that *Williams I* should not count as a strike because his case was dismissed as a "sanction" rather than expressly for "maliciousness." As I have explained, although *Williams I* was indeed dismissed as a sanction, the reason for imposing the sanction of dismissal was on the grounds that the lawsuit was malicious, because it was continued by means of fraud on the court. *See Williams IV,* 2020 WL 127705, at *4–5.

2

strike even if the dismissal is the subject of an appeal." *Id.* at 1763. Williams fails to cite or acknowledge this decision and instead relies on older precedent that has plainly been abrogated by the Supreme Court's ruling in *Coleman*. Doc. #15 at 3 (citing *Thompson v. Drug Enf't Admin.*, 492 F.3d 428 (D.C. Cir. 2007), and *Adepegba v. Hammons*, 103 F.3d 383, 387-88 (5th Cir. 1996)). In the same way, Williams' argument that his consolidated appeals ought to count as one and not two strikes, Doc. #16 at 1, is both irrelevant (because they would collectively count as a third strike) and foreclosed by *Akassy v. Hardy*, 887 F.3d 91, 95 (2d Cir. 2018), as I explained in my prior ruling. *See Williams IV*, 2020 WL 127705, at *6.

Williams argues that the Court erred by concluding that Judge Dooley dismissed *Williams III* on statute of limitations grounds rather than *res judicata* grounds. Doc. #16 at 2. Even if Williams were correct on this point, it would make no difference because a statute of limitations dismissal counts as a dismissal for failure to state a claim under section 1915(g). *See Akassy*, 887 F.3d at 95.

Williams raises an additional argument about the timing of the last two strikes that he sustained when the Second Circuit dismissed as frivolous two of his appeals on February 28, 2019. As Williams correctly notes, the "three strikes rule" applies only to those lawsuits that a prisoner may "bring" *after* a prisoner has "on 3 or more prior occasions … brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g); *Cruz v. Marcial*, 2002 WL 655520, at *1 (D. Conn. 2002).

Williams argues that the last two strikes should not count against him because the Second Circuit's mandates had not yet issued as of the date that he filed the current action in March 2019. The Second Circuit's docket sheet for both appeals reflects that, although the Second

3

Circuit dismissed Williams' appeals on February 28, 2019, Williams filed motions for reconsideration which were denied, and the Second Circuit did not issue its mandates for the two appeals until May 2, 2019. *See Williams v. Hartford Police Dep't*, No. 18-2465-cv, Docs. #92, #97 & #98 (2d Cir.); *Williams v. Hartford Police Dep't*, 18-3523-cv, Docs. #31, #36 & #37 (2d Cir.).

The question thus presented is whether under 28 U.S.C. § 1915(g) a "strike" occurs on the date that a court of appeals dismisses an appeal or on the later date that the court of appeals issues its mandate? As far as I can tell, no court has directly addressed this question. I conclude for reasons stated below that the strike occurs on the date that a court of appeals enters the judgment of dismissal rather than the later date of issuance of the mandate.

I will start with the text of section 1915(g). It provides in relevant part that a strike occurs if an appeal "was dismissed" for reasons of being frivolous, malicious, or failing to state a claim. The statute is pegged to the date of dismissal and without reference to the date of an appellate court's mandate.

The Federal Rules of Appellate Procedure distinguish between a court of appeals' entry of judgment and a court of appeals' issuance of a mandate. Rule 36 of the Federal Rules of Appellate Procedure states in relevant part that "[a] judgment is entered when it is noted on the docket," and that "[o]n the date when judgment is entered, the clerk must serve on all parties a copy of the opinion—or the judgment, if no opinion was written—and a notice of the date when the judgment was entered." Fed. R. App. P. 36(a) and (b). By contrast, Rule 41 of the Federal Rules of Appellate Procedure provides in relevant part that the "the mandate consists of a certified copy of the judgment." Fed. R. App. P. 41(a).

4

The Second Circuit in turn has further explained the significance and difference between its entry of judgment and its later issuance of mandate. "The judgment is the document that states the dispositive action taken by the court of appeals, *and it becomes effective upon its entry on the docket of the court of appeals*." *United States v. Reyes*, 49 F.3d 63, 65 (2d Cir. 1995) (emphasis added). "Appellate Rule 36 clarifies that an appellate judgment is considered 'entered' when notation of the judgment is made in the appellate court's docket." *Id.* at 67. By contrast, "[t]he mandate is the document that officially conveys to the district court the action taken by the court of appeals." *Id.* at 66.

What all this means is that when the Second Circuit entered its orders dismissing both of Williams' appeals on February 28, 2019, its orders were judgments with immediate effect. They had immediate dismissal effect even though the mandates had not yet issued. *See In re Zermeno–Gomez*, 868 F.3d 1048, 1052-53 (9th Cir. 2017) (district courts immediately bound by published decision of appeals court notwithstanding appeals court's stay of mandate). Indeed, the Second Circuit orders at issue in this case stated on their face that "the appeals are DISMISSED."[3] The entry of these orders "dismissed" Williams' appeals within the meaning of section 1915(g).

This conclusion is reinforced by the reasoning of the Supreme Court in *Coleman v. Tollefson*, *supra*. Interpreting the term "dismissed" as it is used in section 1915(g), the Supreme Court explained that "the linguistic term 'dismiss,' taken alone, does not normally include subsequent appellate activity." *Coleman*, 135 S.Ct. at 1763. Although this part of the Supreme

---

[3] A review of the docket for both appeals shows that for both cases the Second Circuit entered twin sets of docket entries on February 28, 2019, with links to the identical order. The first of these entries reflects the Second Circuit's determination of Williams' motion for appointment of counsel, and the second reflects the Second Circuit's dismissal of the appeals. *Williams v. Hartford Police Dep't*, No. 18-2465-cv, Docs. #90 & #91 (2d Cir.); *Williams v. Hartford Police Dep't*, 18-3523-cv, Docs. #29 & #30 (2d Cir.). The common linked document for all these entries states in relevant part that "the appeals are DISMISSED because they 'lack[] an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(e)." *Ibid.*

Court's ruling was describing subsequent appellate activity following a district court's entry of judgment, the same principle applies to an appellate court's judgment and to subsequent appellate activity—including petitions for rehearing, petitions for writs of certiorari, and, after those steps are taken, the issuance of the appellate court's mandate.

Understanding an appellate dismissal to occur upon the filing of a judgment and not the mandate is also supported by *Coleman*'s account of the purpose of the three strikes rule. "The 'three strikes' provision was designed to filter out the bad claims and facilitate consideration of the good. To refuse to count a prior dismissal because of a pending appeal would produce a leaky filter. Appeals take time." *Coleman*, 135 S.Ct. at 1764. So does issuance of the mandate. A prisoner who knew that there was a period of time—one readily susceptible to extension with petitions for rehearing and petitions for writs of certiorari—has every incentive to file yet more frivolous lawsuits before the third strike becomes an "out." Placing the moment of the strike at the moment the mandate is issued would render the three strikes filter "leaky" in just the way the Supreme Court's decision in *Coleman* rejected.

Nor can Williams argue that he did not know when he filed this lawsuit that his appeals had been dismissed on grounds that they were frivolous. The lengthy complaint that he has filed in this case is hand-dated on March 8, 2019, which is the same date that Williams inscribed on his lengthy motions for reconsideration from the appeal dismissals that he filed with the Second Circuit. *Compare* Doc. #1 at 68, *with Williams v. Hartford Police Dep't,* No. 18-2465-cv, Docs. #92 at 11, 13 and14 (2d Cir.); *Williams v. Hartford Police Dep't, 18-3523-cv*, Doc. #31 at 11, 13 and 14 (2d Cir.). In any event, section 1915(g) does not condition its applicability on whether a prisoner knew how many of his prior actions or appeals had been dismissed on grounds that they were frivolous, malicious, or failed to state a claim.

Accordingly, I conclude that there is no basis for me to reconsider my prior ruling concluding that Williams is not entitled to proceed *in forma pauperis*. The motion for reconsideration (Doc. #15) is DENIED. If Williams wishes to maintain this lawsuit, he must pay the filing fee to the Clerk of Court by **January 31, 2020**. The Court will likely dismiss this action if the filing fee is not timely paid.

It is so ordered.

Dated at New Haven, Connecticut this 20th day of January 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge